IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIONEL CRUZ, *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | Civil Action No 1:18-cv-00500-CRC |
| ) | |
| v. ) | |
| ) | |
| SAIGON KITCHEN, INC., *et al.* ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEY'S FEES**

Defendants Linh Vu, *et al.* (hereinafter "Defendants"), by and through undersigned counsel, hereby oppose the Plaintiffs' Motion for Attorney's Fees (the "Motion"), and state as follows:

1. Plaintiffs are only entitled to an award of "reasonable" attorney's fees, which is not what the Motion has demanded. *See Pleitez v. Carney*, 594 F. Supp. 2D 47, 53 (D.C.D.C. 2009) (citing 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(c); id. § 32-1308(b)).

2. On January 31st, 2018, counsel for Defendants raised issue with the Plaintiffs' demand letter, stating in part that the parties appeared to be wrong. Counsel for Defendants did nothing to investigate this matter, and instead filed a complaint modeled on their demand.

1

3. On March 14th, 2018, counsel for Defendants served a Rule 11 motion upon counsel for Plaintiffs. Ex. 1 to this Opposition (true and accurate copy of proposed Rule 11 Motion and attachments).

4. As noted by counsel for Defendants in that proposed Rule 11 Motion,

> On January 31st, 2018, I contacted Mr. Amster regarding his clients the Cruz's, and his letter of January 23rd, 2018, to Ms. Vu, via electronic mail. I raised the issue of unrelated parties in that e-mail, and again in a follow-up phone call with Mr. Amster. Mr. Amster did not follow up with me on the matter prior to filing.

Ex. 1, Declaration of Joshua Whitaker, ¶4.

5. As further noted in the proposed Rule 11 Motion,

> Counsel for Plaintiff either did no inquiry prior to filing this lawsuit, or if they did, they decided, despite no evidence, to file against Ms. Vu, in a blatant attempt to extort money from a blameless person. Counsel for Plaintiffs had the contact information for counsel for Ms. Vu prior to filling, so, even if they had no access to the information through say, asking their clients who their employer was, or even requesting publicly-filed corporate documents from the D.C. Government, they could have simply asked counsel for Ms. Vu if she was involved. In fact, counsel for Defendant pointed out to Mr. Amster that there appeared to be an issue a month before this matter was filed -but Mr. Amster filed against Ms. Vu anyway. *Supra*, Statement of Facts, ¶6. We ask the Court to consider why an experienced attorney would engage in such inadvertence – and suggest that in fact there was no inadvertence at all.
>
> The Complaint makes the following unresearched allegations:
> – At Paragraphs 7, 9, 11, 12, 14, 15, 16, 17, 18, and 20, the Complaint states that Ms. Vu was an employer of the Plaintiffs.
> – At Paragraph 21, the Complaint explicitly states that Ms. Vu was the owner of Saigon Kitchen – a fact that even a cursory review or discussion with their clients by the Zippin firm would have indicated was not correct.
>
> The clear bad faith intention of the filing is made more clear by examining the letter sent by Mr. Amster to Ms. Vu on January 19th, 2018. Mr. Amster addressed that letter to Ms. Vu and Mr. Phong Tran – who is actually a stakeholder in Saigon Kitchen. Ex. 5, Letter of Michael Amster to Linh Vu, *et al.*, Jan. 18th, 2018. Thus, Mr. Amster knew at least <u>something</u> about who the proper persons

2

> were, but apparently either did not finish his inquiry or did not care to.  Mr. Amster therein threatens Ms. Vu with up to $100,000 in attorney's fees (an impressive figure for an attorney with less than seven years in practice, thus only qualifying for a rate of some $350 per hour (which would mean he would have to bill 285 hours on a simple wage claim involving two employees who only work six months each at the same restaurant, with a total of less than 800 total hours in dispute).  He also threatens her with quadruple damages, another impressive feat not often obtained and less often upheld on appeal (perhaps this is what the 200 plus hours were to be spent on researching).

*Id.*, 6-7.  We note that Mr. Amster has only been licensed to practice in this area for those seven years identified above.  While Defendants are quite sure that the practice of law in Alabama is difficult, they are equally sure that it does not net the same compensation that practicing federal litigation in the District of Columbia does.[1]

6. As a result of that Rule 11 letter, the Complaint in this matter was amended. Now, counsel for Plaintiffs seek to recover not only the cost of preparing their unresearched form complaint, but the time that they had to spend responding to the Rule 11 motion, as well as preparation of their Motion.

7. As the Circuit Court stated in *Copeland v. Marshall*, 641 F. 2d 880, 891-92 (D.C. Cir. 1980):

   > Compiling raw totals of hours spent, however, does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time. Similarly, no compensation should

---

[1] The *Laffey* holding itself requires that the claimant be an "experience federal litigator," *Laffey v. Northwest Airlines, Inc.*, 746 F. 2d 4, n.14 (D.C. Cir. 1984).

>  be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail.

8. Thus, this Court must look to the fees requested and determine whether they are in fact reasonable under the circumstances of this case.

9. The fact that the fees are beyond a reasonable amount is easily determined by review of the timesheets, Motion, Exhibit 3, and referring back to Defendants' Rule 11 letter. On January 19th, Mr. Kelly allegedly performed "[r]esearch re correct name of individual Defendant (Linh Vu)[,]" and engaged in a "conference with MA re same." This took at least .6 or possibly .8 of an hour of Mr. Kelly's time, as well as part of Mr. Amster's time of .4 hours on that day. Despite this "research," they got the name completely wrong (or never actually did the work). These attorneys were made aware of the issue by counsel for Defendants via email on January 31st, 2018, and later on a phone call, as demonstrated by Mr. Amster's entry of February 2nd, 2018 ("Read and respond to correspondence from OC."). No further entry is listed for investigated the correct individuals until after the complaint was filed (a form complaint, which we will discuss separately).

10. Furthermore, it is outrageous that counsel attempts to recover 9.8 hours from responding to the Rule 11 letter, a letter necessitated by their own negligent pre-filing investigation. Those fees must be struck from the claim.

11. As to the Complaint, it is a form document, the type of which not only has counsel for Plaintiffs used many times before but which counsel for Defendants has actually seem them use in at least one other matter he participated in. The idea that it took over ten hours to prepare is an insult to this Court, if these attorneys are as experienced as they claim they are in this type of litigation. It is

4

even more insulting in light of the apparent and indisputable absence of pre-filing investigation into the facts.

12. Preparation of the Motion itself took 10.4 hours, time that was not spent contemporaneously, but rather billed at the end of the matter. Pls.' Mot., Ex. 3, at 1. This is another issue, as "[a]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Nat. Ass'n of Concerned Vets. v. Sec. of Defense*, 675 F. 2d 1319, 1327 (D.C. Cir. 1982). It is clear that the Zippin firm did not do this, at least there is no written evidence that they did in their timesheet; if they had, how could it take 10.4 hours to compile such a routine motion?

13. Nevertheless, Plaintiffs did prevail in this matter, and are entitled to a reasonable attorney's fee and costs under the applicable statutes. The unreasonable items identified above amount to 30 hours of attorney time either misspent or spent on items that were entirely the responsibility of counsel for Plaintiffs: "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority[,]" *Copeland, supra.*

14. Defendants ask that these hours be struck, and that counsel for Plaintiffs only be awarded at most the remaining hours, e.g, 15.7 hours of Mr. Amster and Mr. Kelly's time, plus the paralegal"s time, not to exceed $10,000, plus costs.

## CONCLUSION

For the foregoing reasons, Defendants request that the Motion be denied, counsel for Plaintiffs' having shown apparent overbilling this matter; in the alternative,

Defendants request that the fees requested and the lodestar amounts be adjusted downward as identified herein.

RESPECTFULLY SUBMITTED,

DATED:  July 19th, 2018

>/signed/Joshua G. Whitaker/
> Joshua Whitaker, Esq.
> D.C. Bar No. 493898
> whitaker@adelphilaw.com
> 1936 Eastern Avenue
> Baltimore, MD  21231
> Tel./Fax: 888-367-0383
>
> *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2018, I caused a true copy of the foregoing Defendants' Opposition to be served on the parties in this matter via electronic case filing.

>/signed/Joshua G. Whitaker/
> Joshua Whitaker, Esq.
> D.C. Bar No. 493898
> Whitaker@adelphilaw.com
> 1936 Eastern Avenue
> Baltimore, MD  21231
> Tel./Fax: 888-367-0383
>
> *Attorney for Plaintiff Baistar, Inc.*